Receipt number AUSFCC-9715400

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## (BID PROTEST)

|  |  |  |
|---|---|---|
| TRAILBOSS ENTERPRISES, INC., | * | **Redacted Version** |
|  | * |  |
|  | * | Case No. **24-1108C** |
| *Plaintiff,* | * |  |
|  | * |  |
| v. | * | FILED UNDER SEAL |
|  | * |  |
| THE UNITED STATES, | * |  |
|  | * |  |
| *Defendant.* | * |  |
|  | * |  |

---

## BID PROTEST COMPLAINT

For its Bid Protest Complaint against the United States, Plaintiff Trailboss Enterprises, Inc. ("Trailboss"), by and through undersigned counsel, alleges as follows:

### I.  INTRODUCTION

1.      This is a post-award bid protest action against the United States of America, acting through the General Services Administration, Office of Acquisition Operations, Office of Travel, Transportation and Logistics ("GSA" or the "Agency") seeking declaratory judgment and permanent injunctive relief.

2.      This bid protest challenges as arbitrary, capricious, an abuse of discretion, and contrary to law the Agency's irrational decision to award a contract to Acuity International, LLC ("Acuity") under Request for Proposal No. 47QMCH23R0001 (the "RFP").  The RFP sought proposals from firms to provide transportation and logistics services for unaccompanied children ("UC") in the custody and care of the U.S. Department of Health & Human Services ("HHS").

3.      As further explained below, ███████████████████████████████

███████████████████████████████████████████████████████████

1

██████████████████████████████████████████████████

███████████████████████████████████████

█████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████

4.     GSA's arbitrary and capricious actions competitively prejudiced Trailboss.  GSA's flawed source selection process caused the Agency to improperly award the contract to Acuity under the RFP.  But for GSA's arbitrary and capricious actions, Trailboss would have received award of the contract.

5.     In this bid protest proceeding, Trailboss seeks declaratory judgment and permanent injunctive relief.  Trailboss will suffer immediate and irreparable harm if the Court does not enter judgment in its favor.

## II.     PARTIES

6.     The Plaintiff is Trailboss Enterprises, Inc., a corporation organized under the laws of the State of Alaska.  Trailboss timely submitted a proposal in response to Request for Proposal No. 47QMCH23R0001 for the procurement that is the subject of this bid protest proceeding.

7.     The Defendant is the United States of America, acting through the General Services Administration on behalf of the U.S. Department of Health & Human Services.

## III.     JURISDICTION AND VENUE

8.     The United States Court of Federal Claims has jurisdiction over this post-award bid protest action pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1), as amended by the Administration Dispute Resolution Act.  Specifically, this Court has "jurisdiction to render judgment on an action by an interested party objecting to . . . a proposed contract or to a proposed

████████████████████████████████

██████████████████████████████

████████████████████

award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *Id.*

9.     Trailboss is an "interested party" to pursue this post-award bid protest because it was an actual offeror who submitted a technically acceptable proposal in response to the RFP and, but for the Agency's arbitrary and capricious actions, had a substantial chance of receiving award of the contract. *See REV, LLC v. United States*, 91 F.4th 1156, 1164 (Fed. Cir. 2024).

10.     Venue for this post-award bid protest is proper in the United States Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491.

## IV.     FACTUAL ALLEGATIONS

### A.   THE REQUEST FOR PROPOSALS

11.     On November 22, 2022, GSA published the RFP seeking proposals from firms in support of the Office of Refugee Resettlement ("ORR") Division of Unaccompanied Children's Operations ("DUCO").   Throughout the RFP, this procurement is generally referred to as the "Unaccompanied Children Transportation and Logistics" ("UCTL") program.

12.     The ORR DUCO's mission is to provide transportation and logistics services for UCs in HHS's custody and control, including placement with approved sponsors, during the pendency of their immigration cases.

13.     ORR DUCO utilizes a national contractor to provide UCTL services within the ORR network, including scalable transportation for large-scale UC movement in the event of emergencies, surges in the UC population, or other *ad hoc* needs directed by the Government.   This procurement followed several years of GSA acquiring the UCTL services on a sole-source, noncompetitive basis.

14. The UCTL program includes commercial transportation services utilizing buses, vans, taxis, and air transportation for scheduled and unscheduled routes. The RFP required firms to furnish all requisite vehicles and unarmed escort staff necessary to perform the UCTL services. It specifically required the contractor to provide sufficient staffing to perform transportation services for approximately 8,000 UCs per month.

15. The RFP contemplated the award of a contract for a one-year base period, with the potential of four (4) additional one-year option periods, for a five-year contract period of performance.

i. INSTRUCTIONS TO OFFERORS

16. The RFP required firms to submit proposals in three non-price volumes, and submit a Standard Form ("SF") 1449 with line-item pricing. The technical non-price factors included: (i) Volume 1: Technical Capability; (ii) Volume 2: Management; and (iii) Volume 3: Past Performance.

17. For the Technical Capability volume, the RFP limited each offeror's response to 25 pages. The RFP set forth the following instructions for the Technical Capability factor:

- Describe how the Offeror will ensure their ability to provide uninterrupted coverage for the transportation of UCs 24 hours a day, seven days a week, 365 days a year.

  o Offerors must submit a process map, or other visual representation of the work proposed in transporting UC. The map should begin with the receipt of the notification that UC require transportation and end with successful sponsor reunification, with each step in the offered process displayed in a logical, sequential manner.

  o Offerors must submit a narrative that describes each process step, specifically identifying what event or action begins the step, what event or action concludes the step, what activities will occur during the step, what risks exist in each step and how those risks will be mitigated.

  o Offerors must address how they will ensure the availability of trained, qualified staff throughout the transportation process.

4

       ○ Describe how the Offeror intends to provide services and what considerations will be made when a large-scale transportation event is identified.

       ○ Describe the software/computer technology that will be used in maintaining real time tracking of UC movements as required in PWS section 5.8.

   • Contractor owned vehicles:

       ○ Provide a list of available vehicles in Offerors fleet, or describe the proposed method for ensuring sufficient number of vehicles are available for transportation upon award.

       ○ Include if vehicles will need to be acquired prior to beginning performance.

       ○ The offeror shall describe how their fleet is managed and maintained to a level at or above the manufacturer's recommendations.

18.   For the Management volume, the RFP limited each offeror's response to 15 pages.

The RFP set forth the following instructions for the Management factor:

   • Describe the clearance/background check process for hiring UC Escorts, and explain the process anticipated for ensuring the availability of escorts in rural areas.

   • Describe the training curriculum to be utilized for UC Escorts and for all other Contractor employees during the performance of the contract. The minimum following information shall be provided.

       ○ Description of topics – section 15 of the PWS describes the minimum training topics required.

       ○ Number of training sessions.

       ○ Duration of training(s).

       ○ Frequency of training(s). This includes how often Escorts are required to retake the training.

   • Provide the resumes for the key personnel required in the PWS, section 14.

19.   Relevant to the Management factor, Section 14 of the PWS specified the "Key Personnel" for the UCTL program. This included "[a] Lead Project Director and an Alternate Lead Project Director." The RFP specifically stated:

The Lead Project Director shall oversee all aspects of the project, coordinate resources, assure quality control processes are in place, and ensure conformance with task schedules. In addition, the LPD shall meet with the Government monthly and Contractor personnel on a regular basis to review tasks, deliverables, and overall contract performance. The contractor shall propose an Alternate Lead Project Director to assume the duties of the Lead Project Director in his/her absence. The Lead and Alternate shall have full authority to act for the Contractor on all contract matters relating to daily operation of the contract. The Lead or Alternate shall keep the Contracting Officer and COR informed of any performance issues, cost or financial concerns, and potential problems that, if unresolved, will adversely affect the Contractor's performance, schedule, or quality. The Lead or Alternate shall take all appropriate measure to mitigate adverse impact to the contractor and subsequently to ORR. Requirements:

- Master's degree in Transportation Planning, Public Administration, or a related field plus five years of progressive project management experience on projects demonstrating advanced levels of financial and managerial responsibilities.

- Significant experience in local, regional, or state transportation planning and policy, urban planning, intergovernmental agency outreach and or closely related planning program area.

- Clean criminal background check.

- Clean Child Abuse and Neglect (CAN) or child protective services check.

20.     Finally, for the Past Performance volume, the RFP required offerors to submit a minimum of three, and a maximum of five, "recent" and "relevant" contract references. For each reference, the RFP required offerors to provide (i) the customer or agency name, (ii) the contract number, (iii) a point of contact (i.e., the Contracting Officer or other similar for commercial contract), (iv) the approximate total contract value, (v) the contract period of performance (including base and option years), (vi) a description of the contracted supplies or services, and (vii) a short narrative on how the contract's performance information is relevant to the RFP.

21.     Finally, the RFP invited offerors to provide an additional explanation in the Past Performance volume if its performance under a particular contract reference was less than satisfactory.

22.     As noted above, the Past Performance volume required offerors to submit both "recent" and "relevant" contract references.  The RFP defined those terms as follows:

> **Recent** awards are those with ultimate completion dates no greater than 3 years from the year in which this solicitation is issued. Example: If this solicitation is issued in 2022, a contract would need to have a completion date no earlier than 2019 to be considered recent.

> **Relevant** awards are those that include requirements to make travel reservations, provide escorted transportation, track in real time transportation, and ensure on time completion of transportation for people within the United States on a local, regional  and/or interstate basis, or are otherwise similar in the type of work described in the PWS. Relevant does not include contracts that may only have a similar value, contract type, or exist between the offeror and the same agency or organization.

23.     For the Price volume, the RFP required offerors to submit their pricing information via the SF 1449 with firm fixed-price and fixed-price, level of effort line-items to perform the UCTL services for the base period and each of the potential option periods.

24.     The RFP set forth a proposal submission deadline of January 27, 2023.  GSA extended the proposal deadline three times, the most recent occurring when GSA extended the deadline to February, 21, 2023 in Amendment A00003 to the RFP.

ii.  <u>EVALUATION CRITERIA</u>

25.     For the Technical Capability factor, the RFP sets forth the following evaluation criteria:

| Rating | Description |
|---|---|
| 3 – High | To be rated as a 3, an offeror must demonstrate in its technical capability volume:<br><br>1. A staffing plan that describes the offeror's ability and method to provide an adequate number of appropriately trained staff to provide coverage 24 hours a day, seven days a week, 365 days a year.  The plan must |

| | |
|---|---|
| | describe the offeror's solution in sufficient detail to leave no doubt in the evaluators [*sic*] judgment of its ability to perform at the stated level, and an evaluator must have no additional questions or need for additional information in addition to what is provided in the technical capability volume to rate the volume at a 3 level. |
| | 2. A demonstrated capability of conducting a large-scale transfer. This capability must be described in adequate detail to leave no doubt in the evaluator's judgment of its ability to accomplish a large-scale transfer at the stated level, and an evaluator must have no additional questions or need for additional information in addition to what is provided in the technical capability volume to rate the volume at a 3 level. |
| | 3. The offeror's system for maintaining positive accountability for UC must provide real time tracking of each UC and provide all information described by the work statement for each UC. In order to be rated a 3, the offeror must describe its real time tracking and required date elements in sufficient detail to require no additional information in addition to the provided proposal. |
| | 4. Contractor provided vehicles are the appropriate size, are readily available for use, and are maintained to a level at or above the manufacturer's recommendations. To receive a 3 rating, the offeror will describe its supplied vehicle information in sufficient detail to address all evaluator questions and to require no additional information in addition to what is provided in the technical capability volume. |
| 2 – Medium | To be rated as a 2, an offeror must demonstrate in its technical capability volume: |
| | 1. A staffing plan that describes the offeror's ability and method to provide an adequate number of appropriately trained staff to provide coverage 24 hours a day, seven days a week, 365 days a year. The plan must describe the offeror's solution in detail, but fails to do so at a level that leaves no doubt in the evaluators [*sic*] judgment of its ability to perform at the stated level, and an evaluator must request additional information from an offeror in addition to what is provided in the technical capability volume to rate the volume at a 2 level. |
| | 2. A demonstrated capability of conducting a large-scale transfer. This capability must be described in detail, but the technical capability volume fails to explain this capability sufficiently so that an evaluator must request additional information from an offeror in addition to what is provided in the technical capability volume. |
| | 3. The offeror's system for maintaining positive accountability for UC must provide real time tracking of each UC and provide all information |

| | described by the work statement for each UC. In order to be rated a 2, the offeror must describe its real time tracking and required data elements in detail, but not in sufficient detail so that additional information must be requested from the offeror. |
|---|---|
| | 4. Contractor provided vehicles are the appropriate size, are readily available for use, and are maintained to a level at or above the manufacturer's recommendations. To receive a 2 rating, the offeror will describe its supplied vehicle information in detail, but not in sufficient detail to address all evaluator questions without the need to request additional information from the offeror. |
| 1 – Low | To be rated as a 1, an offeror must demonstrate in its technical capability volume: |
| | 1. A staffing plan that fails to describe the offeror's ability and method to provide an adequate number of appropriately trained staff to provide coverage 24 hours a day, seven days a week, 365 days a year. The number of evaluated weaknesses and deficiencies in the plan are so great that only an extensive proposal revision is likely to address the identified issues. |
| | 2. A demonstrated capability of conducting a large-scale transfer. This capability is not described in detail or at all, but the technical capability volume fails to demonstrate that the offeror understands the contract requirements, and only through an extensive proposal revision can these evaluated weaknesses and deficiencies be addressed. |
| | 3. The offeror's system for maintaining positive accountability for UC must provide real time tracking of each UC and provide all information described by the work statement for each UC. In order to be rated a 1, the offeror must fail to describe its real time tracking and required data elements in detail, and the evaluated weaknesses and deficiencies can only be addressed through extensive proposal revision. |
| | 4. Contractor provided vehicles are the appropriate size, are readily available for use, and are maintained to a level at or above the manufacturer's recommendations. To receive a 1 rating, the offeror will fail to describe its supplied vehicle information in detail, and the evaluated weaknesses and deficiencies are so great that only an extensive proposal revision is likely to address them. |

26.     For the Management factor, the RFP further sets forth the following evaluation criteria, as amended by Amendment A00003:

| Rating | Description |
|---|---|
| 3 – High | To be rated as a 3, an offeror must demonstrate in its Management Volume:<br><br>1. Describe the clearance/background check process for hiring UC Escorts.  To be rated as a 3, the clearance process will be described in a manner that ensures effective background checks are being conducted, and that no additional information is needed from the offeror in addition to their proposal to address any evaluator questions.<br><br>2. A detailed plan for ensuring the availability of escorts in rural areas.  To be rated as a 3, the plan should be comprehensive such that no additional information is needed from the offeror in addition to their proposal to address any evaluator questions.<br><br>3. Describe the training curriculum to be utilized for UC Escorts and for all other Contractor employees during the performance of the contract. The minimum following information shall be provided:<br>    a. Description of topics – section 15 of the PWS describes the minimum training topics required.<br>    b. Number of trainings.<br>    c. Duration of training(s).<br>    d. Frequency of training(s).  This includes how often Escorts are required to retake the training.<br>To be rated as a 3 level, the Management Volume must address each listed element in sufficient detail that an evaluator completely understands the proposal without the need for additional information provided by the offeror.  Evaluators must be confident that contractor staff will be sufficiently trained to care for and transports UCs in a safe, compassionate and efficient manner to rate the Management Volume at a 3 level.<br><br>4. Provide the resumes for the key personnel required in the PWS, section 14.  Evaluators will review key personnel to ensure that individuals hold the appropriate credentials and have sufficient experience to oversee the project.  To be rated at a 3 level, the evaluator must be able to identify that experience and credentials are sufficient without requiring any additional information from the offeror. |
| 2 – Medium | To be rated as a 2, an offeror must demonstrate in its Management Volume:<br><br>1. Describe the clearance/background check process for hiring UC Escorts.  To be rated as a 2, the clearance process will be described in a manner that ensures effective background checks are being conducted, but not in a manner that allows an evaluator to completely understand the process without requesting additional information from the offeror. |

| | |
|---|---|
| | 2. A detailed plan for ensuring the availability of escorts in rural areas. To be rated as a 2, the plan/process will be described in a manner that addresses how the offeror will ensure the availability of escorts in rural areas, but not in a manner that allows an evaluator to completely understand the plan/process without requesting additional information from the offeror.<br><br>3. Describe the training curriculum to be utilized for UC Escorts and for all other Contractor employees during the performance of the contract. The minimum following information shall be provided:<br>   a. Description of topics – section 15 of the PWS describes the minimum training topics required.<br>   b. Number of trainings.<br>   c. Duration of training(s).<br>   d. Frequency of training(s). This includes how often Escorts are required to retake the training.<br>To be rated as a 2 level, the Management Volume must address each listed element, however the Volume fails to provide sufficient detail so that an evaluator completely understands the proposal, and will require additional information provided by the offeror. Evaluators must be able to identify that contractors staff will be trained to care for and transport UCs in a safe, compassionate and efficient manner, but will require additional information to fully understand the offeror's approach to training its personnel.<br><br>4. Provide the resumes for the key personnel required in the PWS, section 14. Evaluators will review key personnel to ensure that individuals hold the appropriate credentials and have sufficient experience to oversee the project. To be rated at a 2 level, the evaluator must be able to identify that either experience and credentials are sufficient, but will require additional information from the offeror to fully qualify the key personnel. |
| 1 – Low | To be rated as a 1, an offeror must demonstrate in its Management Volume:<br><br>1. Describe the clearance/background check process for hiring UC Escorts. To be rated as a 1, will not be described in a manner that ensures effective background checks are being conducted, and that evaluated weaknesses and deficiencies can only be addressed through extensive proposal revision.<br><br>2. A detailed plan for ensuring the availability of escorts in rural areas. To be rated as a 1, a clearance process will not be described in a manner that ensures effective background checks are being conducted ,and that evaluated weaknesses and deficiencies can only be addressed through an extensive proposal revision. |

| | 3. Describe the training curriculum to be utilized for UC Escorts and for all other Contractor employees during the performance of the contract. The minimum following information shall be provided:<br>   a. Description of topics – section 15 of the PWS describes the minimum training topics required.<br>   b. Number of trainings.<br>   c. Duration of training(s).<br>   d. Frequency of training(s). This includes how often Escorts are required to retake the training.<br><br>To be rated as a 1 level, the Management Volume fails to address each listed element, and/or the Volume fails to provide detail to allow an evaluator to believe the offeror understood the government's requirements. Evaluators cannot determine whether or not contractor staff will be trained to care for and transports UCs in a safe, compassionate and efficient manner, and the number of weaknesses and deficiencies will require an extensive proposal revision to address.<br><br>4. Provide the resumes for the key personnel required in the PWS, section 14. Evaluators will review key personnel to ensure that individuals hold the appropriate credentials and have sufficient experience to oversee the project. To be rated at a 1 level, the evaluator will not be able to determine whether key personnel have the required experience or certifications, and the proposal will require an extensive revision to address the evaluated weaknesses and deficiencies. |
|---|---|

27.    Finally, for the Past Performance factor, the RFP sets forth the following evaluation criteria:

| Rating | Description |
|---|---|
| 3 – High | To be rated as a 3, an offeror must demonstrate in its Past Performance Information:<br><br>A high degree of confidence that the contractor is capable of performing at least a SATISFACTORY level based on a review of offeror provided and Contracting Officer provided past performance information:<br><br>1. The majority of past performance ratings are SATISFACTORY or higher.<br><br>2. The contractor has a documented history of meeting contract performance standards, and of overcoming challenges associated with contract performance.<br><br>3. Nothing in the offeror submitted or Contracting Officer submitted past performance information leads an evaluator to believe than an offeror |

| | will struggle to perform at the government's stated standards or overcome performance issues that arise during performance. |
|---|---|
| 2 – Neutral | To be rated as a 2, an offeror must demonstrate in its Past Performance Information: |
| | A neutral degree of confidence that the contractor is capable of performing at least a SATISFACTORY level based on a review of offeror provided and Contracting Officer provided past performance information: |
| | 1. The majority of past performance ratings are SATISFACTORY, with few ratings higher or lower than satisfactory. |
| | 2. The contractor has a documented history of meeting contractor performance standards, and of overcoming challenges associated with contract performance with few issues that may be expected on this effort based on their previous contract performance. |
| | 3. Few instances of marginal performance in the offeror submitted or Contracting Officer submitted past performance information leads an evaluator to believe that an offeror will most likely not struggle to perform at the government's stated standards or overcome performance issues that arise during performance. |
| | 4. If a vendor has no RECENT or RELEVANT past performance, it will be rated as a 2 for evaluation purposes. |
| 1 – Low | To be rated as a 1, an offeror must demonstrate in its Past Performance Information: |
| | A low degree of confidence that the contractor is capable of performing at least a SATISFACTORY level based on a review of offeror provided and Contracting Officer provided past performance information: |
| | 1. The majority of past performance ratings are MARGINAL, with few ratings higher or lower than marginal. |
| | 2. The contractor has a documented history of failing to meet contract performance standards, and/or to overcome challenges associated with contract performance with many issues that may be expected on this effort based on their previous contract performance. |
| | 3. Many instances of marginal or unsatisfactory performance in the offeror submitted or Contracting Officer submitted past performance information leads an evaluator to believe than an offeror will most likely struggle often to perform at the government's stated standards and/or fail to overcome performance issues that arise during performance. |

28.     For the Technical Capability and the Management factors, the RFP set forth the following rating scheme:

    a. <u>Strength</u> – an aspect of the evaluated proposal that exceeds a stated standard or represents an aspect that an evaluator believes will allow a contractor to perform above the government's minimum requirement.

    b. <u>Weakness</u> – an aspect of the evaluated proposal that an evaluator feels either fails to completely describe how an offeror will achieve a contract standard, or an aspect that an evaluator believes will impede an offeror's ability to meet the government's minimum requirement.

    c. <u>Significant Weakness</u> – a weakness that, in the evaluator's opinion, will jeopardize successful contract performance.  An evaluator must connect the weakness to the aspect of performance that is extremely likely to fail should the weakness not be addressed through a proposal revision.

    d. <u>Deficiency</u> – an aspect of a proposal that is missing, omitted, or not described completely.  Deficiencies are procedural failures on the part of an offeror to provide a complete proposal, a complete explanation of a procedure or solution, or other aspect of a proposal that is insufficient for evaluation due to missing information.

iii.  <u>SOURCE SELECTION METHOD</u>

29.     The RFP incorporates Federal Acquisition Regulation ("FAR") 52.212-2, Evaluation – Commercial Products and Commercial Services.  It establishes GSA's selection of a best-value tradeoff source selection method.  The RFP specifically states:

> The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered.  The following factors shall be used to evaluate offers:
>
> Technical Capability
> Management
> Past Performance
> Total Price

30.     The RFP then goes on to explain the best-value tradeoff method, stating: "Technical and past performance, when combined, are approximately equal when compared to price."  Notably, however, the Management factor is omitted from this tradeoff scheme.

31.     Elsewhere, the RFP describes the Source Selection Evaluation Board's ("SSEB")

duty to provide an award recommendation to the Source Selection Authority ("SSA").  It states:

> SSEB Recommendation - Upon the successful completion of the evaluation
> process, the SSEB will recommend one offeror for award based upon the
> results of their evaluation.  This recommendation must consider all ratings
> and total evaluated price, and ensure that all the non-price factors are, when
> combined, approximately equal to price when recommending an offeror for
> consideration to the SSA.  If the SSEB believes a trade-off is warranted,
> meaning that a higher priced proposal represents a better value to the
> government based on its superior non-price factor ratings, it will provide its
> rationale to the SSA with its recommendation. The SSEB recommendation
> should be included in the SSEB Rating Report.

B.    TRAILBOSS'S PROPOSAL SUBMISSION

32.     On February 21, 2023, Trailboss submitted a proposal to GSA in response to the

RFP. ██████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

33.     ████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████      ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

C.    GSA'S FIRST AWARD ANNOUNCEMENT

34.     On June 15, 2023, GSA notified Trailboss of its decision to award a contract to

Acuity.  The notice referred to GSA's "In-Depth Findings Using Open Reporting Methods," or

"INFORM," debriefing process (the "June INFORM Notice").

35.     The June INFORM Notice stated GSA received nine (9) proposals in response to the RFP.  With respect to its award decision, GSA provided a side-by-side comparison of its evaluation of Acuity's and Trailboss's respective proposals:

| Evaluation Factor | Acuity International, LLC | Trailboss Enterprises, Inc. |
|---|---|---|
| Factor 1 – Technical Capability | 3 – High | |
| Factor 2 – Management | 3 – High | |
| Factor 3 – Past Performance | 3 – High | |
| Evaluated Price | $985,423,777.80 | |

36.     ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

37.     In addition, the June INFORM Notice provided GSA's ranking of offerors who submitted a proposal in response to the RFP, as follows:



| Offeror Cost/Price Ranking Chart |
|---|
| 1. Acuity International, LLC |

38.     Finally, the June INFORM Notice set forth GSA's basis for awarding the contract to Acuity, stating:

> Acuity International, LLC received the highest rating of 3 – High for Technical Capability, Management, and Past Performance.  Their proposed price was the lowest proposed price and was determined to be fair and reasonable.  Additionally, no alternative offeror was determined to offer technical superiority to support a trade-off to a higher price.  In accordance

16

with the RFP, Acuity International's proposal represents the best value to the government.

39. ███████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████

40.    On June 30, 2024, GSA awarded Contract No. 47QMCH23C0002 to Acuity for a total value, including the base period and options periods, of $985,423,777.80.

D.    MVM, INC.'S FIRST BID PROTEST

41.    On July 5, 2023, MVM, Inc. ("MVM") filed a post-award bid protest before the Government Accountability Office ("GAO") challenging GSA's decision to award a contract to Acuity.  GAO docketed the bid protest as B-421788.1.

42.    The bid protest generally alleged that GSA's "responsibility determination was unreasonable in part based on its failure to consider information that, by its nature, would be expected to have a strong bearing on whether Acuity is responsible."  *MVM, Inc.*, B-421788.3, B-421788.4, 2020 U.S. Comp. Gen. LEXIS 99, at *5 (Mar. 5, 2024) (referring to GAO Docket No. B-421778.1).  Specifically, MVM alleged that GSA failed to consider a recent settlement with the U.S. Department of Justice resolving "allegations that Acuity's affiliate had violated the Civil False Claims Act, 31 U.S.C. §§ 3279–3733, and an ongoing class action lawsuit against [Acuity's affiliate] for allegedly failing to secure personally identifiable information."  *Id*. at *6.

43.    After reviewing the record in response to MVM's bid protest, GAO conducted an outcome prediction conference with the parties.  *See id*.  In that conference, GAO "notified the parties that it appeared several aspects of the agency's evaluation of the awardee's past performance

were either unreasonable or inadequately documented, and that the agency's resulting best-value tradeoff was flawed." *Id.*

44.      In response to the outcome prediction conference, GSA informed GAO of its decision to take voluntary corrective action to "conduct[] a new past performance evaluation and mak[e] a new source selection decision. GAO subsequently dismissed MVM's bid protest as academic.

E.   GSA'S SECOND AWARD ANNOUNCEMENT

45.      On November 16, 2023, GSA notified Trailboss that it received a bid protest challenging its prior contract award to Acuity. GSA also informed Trailboss that it undertook corrective action to resolve that bid protest. The corrective action entailed GSA re-evaluating each offeror's Past Performance volume only and making a new award decision.

46.      GSA's email to Trailboss attached an updated INFORM Notice, again reflecting its decision to award a contract to Acuity (the "November INFORM Notice").

47.      The November INFORM Notice reflected GSA's decision to downgrade Acuity's proposal under the Past Performance factor from "3 – High" to "2 – Neutral." This reflected GSA's conclusion that it merely had "[a] neutral degree of confidence that [Acuity] is capable of performing at a SATISFACTORY level." GSA's remaining evaluation of Acuity's proposal under the Technical Capability and Past Performance factors did not change.

48.      As a result, the November INFORM Notice set forth the following side-by-side evaluation comparison of Acuity's and Trailboss's respective proposals:

| Evaluation Factor | Acuity International, LLC | Trailboss Enterprises, Inc. |
|---|---|---|
| Factor 1 – Technical Capability | 3 – High | |
| Factor 2 – Management | 3 – High | |
| Factor 3 – Past Performance | 2 – Neutral | |
| Evaluated Price | $985,423,777.80 | |

49. ███████████████████████████████████████
███████████████████████████████████████████
███████████████

50.     The November INFORM Notice left the ranking of offerors who submitted a proposal in response to the RFP unchanged from the prior notice, as follows:



| Offeror Cost/Price Ranking Chart |
| --- |
| 1. Acuity International, LLC |

51.     Finally, the November INFORM Notice set forth GSA's "Rationale for Decision," stating:

> Acuity International, LLC received the highest ratings of 3 – High for Technical Capability and Management, and a rating of 2 – Neutral for Past Performance. Their proposed price was the lowest proposed price and was determined to be fair and reasonable. Additionally, no alternative offeror was determined to offer technical superiority to support a trade-off to a higher price and the increase in confidence from awarding to a vendor with a higher past performance rating does not justify the significant price increase. In accordance with the RFP, Acuity International's proposal represents the best value to the government.

52.     On November 16, 2023, GSA renewed its award decision and announced the award of Contract No. 47QMCH24C0001 to Acuity in the amount of $985,423,777.80.

F.     MVM, INC.'S SECOND BID PROTEST

53.     On December 5, 2024, MVM filed a second bid protest before GAO challenging GSA's decision to award the contract to Acuity. GAO docketed the bid protest as B-421788.2. MVM subsequently filed a supplemental bid protest, docketed by GAO as B-421788.3.

54.     According to GAO's published decision, MVM challenged the qualifications of "Acuity's proposed lead project director, one of the [RFP]'s lead personnel positions." *MVM, Inc.*, 2020 U.S. Comp. Gen. LEXIS 99, at *8.  MVM alleged further that "GSA unreasonably concluded that Acuity was a responsible offeror because the contracting officer failed to consider relevant information regarding a False Claims Act settlement between Acuity's affiliate . . . and [the Department of Justice] that was announced in 2022." *Id.* at *16.

55.     In a decision dated March 5, 2024, GAO sustained MVM's bid protest on both grounds.  On the first issue, Acuity's failure to meet the RFP's key personnel requirement, GAO concluded that "the evaluation record [did] not contain sufficient information to establish that the agency reasonably credited Acuity's proposal for meeting the applicable key personnel experience requirement." *Id.* at 11, 12 (noting that "none of the evaluators discussed their consideration of the proposed key personnel's management experience demonstrating advanced financial responsibility").  With regard to the second issue of Acuity's responsibility, GAO further observed "the absence of any consideration by the contracting officer as to whether known allegations of fraud against an affiliate affected the awardee's responsibility," thus concluding that "the contracting officer failed to reasonably consider information that was known or reasonably should have been known that, by its nature, would be expected to have a strong bearing on whether the awardee should be found responsible." *Id.* at *21.

56.     In sustaining MVM's bid protest, GAO "recommend[ed] that the agency reevaluate proposals under the management factor in a manner consistent with the terms of the solicitation and [GAO]'s decision and make a new award decision, or alternatively, reopen discussions and request revised proposals before reevaluating." *Id.* at *24.  GAO further "recommend[ed] that the

agency make and adequately document a responsibility determination as part of the new award decision." *Id.*

G.   GSA'S FINAL AWARD ANNOUNCEMENT

57.     On June 10, 2024, GSA notified Trailboss of its decision to again award the contract to Acuity.  Like before, GSA provided Trailboss a new INFORM notice (the "Final INFORM Notice") describing its award decision.

58.     The Final INFORM Notice reflected GSA's decision to further downgrade the Acuity's proposal under the non-price factors.  Specifically, GSA lowered Acuity's rating under the Management factor from "3 – High" to "2 – Mid."  Under the terms of the RFP, this indicates that the Management volume submitted by Acuity lacked clarity and would require "additional information" for GSA to understand the firm's proposed approach.

59.     The Final INFORM Notice set forth a new side-by-side evaluation comparison of Acuity's and Trailboss's respective proposals:

| Evaluation Factor | Acuity International, LLC | Trailboss Enterprises, Inc. |
|---|---|---|
| Factor 1 – Technical Capability | 3 – High | ████████ |
| Factor 2 – Management | 2 – Mid | |
| Factor 3 – Past Performance | 2 – Neutral | |
| Evaluated Price | $985,423,777.80 | |

60.     ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

61.     The Final INFORM Notice left the ranking of offerors unchanged from the prior notice, as follows:

| Offeror Cost/Price Ranking Chart |
|---|
| 1. Acuity International, LLC |
| ████████████████████████████ |

██████████████████████████

62.  Last, the Final INFORM Notice set forth GSA's "Rationale for Decision," stating:

Acuity International, LLC received the highest ratings of 3 – High for Technical Capability and a rating of 2 – Mid for Management and a rating of 2 – Neutral for Past Performance.  Their proposed price was the lowest proposed price and was determined to be fair and reasonable.  Additionally, no alternative offeror was determined to offer technical superiority to support a trade-off to a higher price, and the increase in confidence from awarding to a vendor with a higher Past Performance and Management rating does not justify the significant price increase.  In accordance with the RFP, Acuity International's proposal represents the best value to the government.

63.  On June 10, 2024, GSA once again renewed its award decision and announced the award of Contract No. 47QMCH24C0001 to Acuity in the amount of $985,423,777.80.

**H.  TRAILBOSS'S INFORM DEBRIEFING FROM GSA**

64.  ████████████████████████████████████████
███████████████████████████████

65.  ████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████

66.  ████████████████████████████████████████
████████████████████████████████████████
██████████████████████

67.  This bid protest proceeding follows GSA's arbitrary and capricious decision to award the contract to Acuity.

██████████████████████████████
████████████████████████████
████████████████████

## V.  CLAIMS FOR RELIEF

### COUNT I

( ████████████████████████████████████████ )

68.    Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

69.    ████████████████████████████████████████

████████████████████████████████████████

70.    ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████        ████████████████████████████

████████████████████

71.    According to the RFP, GSA committed to utilize a best-value tradeoff source selection method after evaluating each of the non-price factors.  The RFP provided that the "all the non-price factors are, when combined, approximately equal to price."  ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████

72.    Trailboss was prejudiced by ████████████████████████████ But for GSA's error, Trailboss had a substantial chance of being awarded the contract under the RFP.

73.     Injunctive and declaratory relief are necessary to resolve this controversy between Trailboss and the United States.

COUNT II
(Irrational Best-Value Tradeoff Decision)

74.     Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

75.     Under applicable decisional law, a tradeoff source selection method requires the procuring agency to conduct a meaningful analysis comparing proposals to determine the best value to the government.  It "obliges the agency to do more than simply parrot back the strengths and weaknesses of the competing proposals–rather, the agency must dig deeper and determine whether the relative strengths and weaknesses of the competing proposals are such that it is worth paying a higher price." *Serco Inc. v. United States*, 81 Fed. Cl. 463, 497 (2008).

76.     According to the RFP, GSA committed to utilize a best-value tradeoff source selection method after evaluating each of the non-price factors.  The RFP provided that the "all the non-price factors are, when combined, approximately equal to price."

77.     █████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

78.     █████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

24

████████████████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████



79. ████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████

80.    Trailboss was prejudiced by GSA's failure to conduct a meaningful best-value tradeoff resulting in an irrational decision to award the contract to Acuity.  But for GSA's error, Trailboss had a substantial chance of being awarded the contract under the RFP.

81.    Injunctive and declaratory relief are necessary to resolve this controversy between Trailboss and the United States.

COUNT III

(████████████████████████████████████)

82.    Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

83.    GSA's evaluation of proposals and its decision to award the contract to Acuity violated numerous procurement statutes and regulations, including (i) regulatory requirements to treat offerors fairly and (ii) regulatory requirements to evaluate proposals exclusively against the RFP's stated evaluation criteria.

84. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

85. ███████████████████████████████████████

███████████████████████████████████████████

86.     Trailboss was prejudiced by GSA's violations of applicable procurement law and regulations.  But for GSA's error, Trailboss had a substantial chance of being awarded the contract under the RFP.

87.     Injunctive and declaratory relief are necessary to resolve this controversy between Trailboss and the United States.

COUNT IV
<u>(Breach of Implied Duty of Good Faith and Fair Dealing)</u>

88.     Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

89.     As an actual bidder who submitted a proposal under the RFP, Trailboss had an implied contract with GSA imposing the duty of good faith and fair dealing.

90.     GSA breached the implied contract to consider all proposals fairly and honestly by conducting the procurement in an arbitrary, capricious, and irrational manner.

91.     Trailboss was prejudiced by GSA's breach of the implied contract and the duty of good faith and fair dealing.  But for GSA's error, Trailboss had a substantial chance of being awarded the contract under the RFP.

92.     Injunctive and declaratory relief are necessary to resolve this controversy between Trailboss and the United States.

███████████████████████████████████

███████████████████████████████████

███████████████████████

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Trailboss Enterprises, Inc. respectfully asks this Court to enter judgment in its favor and against Defendant and to:

A.      Declare that GSA's award of the contract to Acuity is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

B.      Enjoin GSA and Acuity from commencing performance on the contract awarded under the RFP pending reevaluation and a new award decision;

C.      Order GSA to reevaluate proposals in accordance with the RFP's evaluation criteria or, in the alternative, conduct discussions with all offerors, solicit and reevaluate revised proposals, and make a new best-value decision;

D.      Award Trailboss its attorney fees and costs incurred to pursue this action, and/or its bid and proposal costs; and

E.      Grant any such other relief as the Court deems appropriate.

Dated: July 22, 2024                      Respectfully submitted,

                                           /s/ *Shaun C. Kennedy*
                                          Shaun C. Kennedy
                                             *Counsel of Record*
                                          Sam C. Kidd
                                          Ryan K. Lundquist
                                          Christine M. Garson
                                          HOLLAND & HART LLP
                                          555 Seventeenth Street, Suite 3200
                                          Denver, Colorado 80202
                                          Telephone: (303) 295-8377
                                          Email: sckennedy@hollandhart.com

                                          *Attorneys for Trailboss Enterprises, Inc.*

32470161_v1

27